## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVE KLEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EGALET CORPORATION, ROBERT S. RADIE, STANLEY J. MUSIAL, and JEFFREY M. DAYNO,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Steve Klein ("Plaintiff"), individually and on behalf of all other persons similarly situated, by its undersigned attorneys, for its complaint against Defendants, alleges the following based upon personal knowledge as to itself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through its attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Egalet Corporation ("Egalet" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Egalet securities between December 15, 2015 and January 9, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Egalet is a specialty pharmaceutical company developing, manufacturing and commercializing innovative treatments for pain and other conditions.  Egalet revolves around a proprietary technology called Guardian Technology ("Guardian") which Egalet broadly applies for different classes of pharmaceuticals products.  Particularly, Egalet uses Guardian for its lead product ARYMO ER, an abuse deterrent oral morphine formulation for the management of severe pain requiring daily "around-the-clock" long-term opioid treatment.

3.     The Company was founded in 2010 and is headquartered in Wayne, Pennsylvania. Egalet's stock trades on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "EGLT."

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Egalet misrepresented ARYMO ER's oral abuse-deterrent profile; (ii) Egalet falsely or misleadingly overstated ARYMO ER's chances to receive the oral abuse-deterrent labeling; (iii) the NDA for ARYMO ER lacked sufficient data to support the oral-labeling claims; (iv) the label was likely not to include the oral abuse-deterrent claims; and (v) as a result of the foregoing, Egalet's public statements were materially false and misleading at all relevant times.

2

5.      On January 9, 2017, post-market, Egalet issued a press release, filed on Form 8-K with the SEC, entitled "Egalet Receives FDA Approval for ARYMO™ ER (morphine sulfate) C-II, an Extended-Release Morphine Product Formulated with Abuse-Deterrent Properties for Treatment of Chronic Pain," announcing the approval of its product Arymo ER. The FDA only granted an intravenous abuse-deterrent label claim and did not approve the oral abuse-deterrent labeling as requested by the Company.   The press release stated in pertinent part:

> ARYMO ER has been approved in three dosage strengths: 15 mg, 30 mg and 60 mg. The U.S. commercial launch, utilizing Egalet's established commercial infrastructure, is planned for the first quarter 2017.
>
> "With the majority of ER opioids in easy to abuse forms, it is important that healthcare professionals have additional treatment options like ARYMO ER that are resistant to different methods of manipulation using a variety of tools," said Bob Radie, president and chief executive officer of Egalet. ***"ARYMO ER has physical and chemical properties expected to make abuse by injection difficult, which is important given it is the most common non-oral route of morphine abuse and the most dangerous. With our commercial organization in place, we are ready to launch ARYMO ER in the first quarter of 2017."***
>
> The FDA approval of ARYMO ER triggered $40 million in new funding to Egalet from the second tranche of the senior secured debt financing previously announced on August 31, 2016. In connection with the second tranche, the note purchasers will also receive a royalty right, representing a right to receive an aggregate 1.5% royalty payment on net sales of ARYMO ER, as further described in Egalet's current report on form 8-K filed on September 1, 2016.

(Emphasis added.)

6.      On that same day, the FDA issued a statement entitled "Impact of Exclusivity on Approval of Arymo ER."  The statement read in pertinent part:

> [1-9-17] Today, the FDA approved Arymo ER (morphine sulfate extended-release tablets), a new extended-release opioid with abuse-deterrent properties. Arymo ER is approved to treat pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. Arymo ER is formulated to give it physicochemical properties expected to make abuse by injection difficult. However, abuse by the intravenous, intranasal, and oral routes is still possible.

Expanding access to abuse-deterrent opioids to discourage misuse and abuse is part of the FDA's Opioid Action Plan, and the pharmaceutical industry has shown significant interest in the development of abuse-deterrent products. Technology is progressing rapidly, and these medications hold promise as their abuse-deterrent qualities continue to improve and as they become more widely available.

As the FDA reviews new drug applications, the agency works through various issues that may arise, including exclusivity. *Another product, MorphaBond (morphine sulfate extended-release tablets), has marketing exclusivity for labeling describing the expected reduction of abuse of single-entity extended-release morphine by the intranasal route due to physicochemical properties. Due to MorphaBond's marketing exclusivity, no other single-entity extended-release morphine product submitted in an abbreviated new drug application or 505(b)(2) application can be approved for that use at this time.*

Because the science of abuse deterrence is still evolving and the agency does not yet know which technologies will ultimately prove most effective in deterring opioid abuse, the agency believes that it is in the interest of public health to encourage development of multiple abuse-deterrent alternatives while continuing to promote and protect innovation.

(Emphasis added.)

7.      On this news, Egalet's share price declined $1.86, or 22.2%, to close at $6.52 per share on January 10, 2017.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Egalet is headquartered within this District.

12.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.     Plaintiff, as set forth in the attached Certification, acquired Egalet securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.     Defendant Egalet is incorporated in Delaware, and the Company's principal executive offices are located at 600 East Lee Road, Suite 100, Wayne, Pennsylvania 19087. Egalet's shares trade on the NASDAQ under the ticker symbol "EGLT."

15.     Defendant Robert S. Radie ("Radie") has served at all relevant times as the Company's Chief Executive Officer, President and Director.

16.     Defendant Stanley J. Musial ("Musial") has served at all relevant times as the Company's Chief Financial Officer and Secretary.

17.     Defendant Jeffrey M. Danyo, M.D. ("Danyo") has served at all relevant times as the Company's Chief Medical Officer.

18.     The defendants referenced above in ¶¶ 15-17 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

5

19.     Egalet is a specialty pharmaceutical company developing, manufacturing and commercializing innovative treatments for pain and other conditions.  Egalet revolves around a proprietary technology called Guardian Technology ("Guardian") which Egalet broadly applies for different classes of pharmaceuticals products.  Particularly, Egalet uses Guardian for its lead product ARYMO ER, an abuse deterrent oral morphine formulation for the management of severe pain requiring daily "around-the-clock" long-term opioid treatment.

### Materially False and Misleading Statements Issued During the Class Period

20.     The Class Period begins on December 15, 2015, when Egalet issued a press release titled "Egalet Submits New Drug Application to U.S. Food and Drug Administration for ARYMO™ ER (Morphine Sulfate) Extended-Release Tablets", announcing that Egalet submitted a NDA to the FDA for ARYMO ER.  The press release stated in pertinent part:

> [T]he company has submitted a new drug application (NDA) for ARYMO ER (morphine sulfate) extended-release tablets for the management of pain severe enough to require daily, around-the-clock opioid treatment and for which alternative treatments are inadequate. The submission is based on the pivotal pharmacokinetic studies that demonstrated bioequivalence of ARYMO ER 15 mg, 30 mg and 60 mg to equivalent doses of MS Contin (morphine sulfate controlled-release). In addition, the submission includes a comprehensive battery of abuse-deterrent studies (Category 1, 2 and 3) which were conducted to support abuse-deterrent label claims for intravenous injection, snorting and oral abuse.

> "Given the need for treatment options for the millions of individuals living with chronic pain, combined with the importance of providing formulations that deter opioid abuse because of the prescription abuse epidemic here in the United States, the NDA submission of ARYMO ER represents an important milestone and is the first NDA from our proprietary Guardian Technology program," said Bob Radie, president and chief executive officer of Egalet. "We look forward to working with the FDA to bring to market ARYMO ER for people living with chronic pain."

21.     On March 9, 2016, during a conference call to discuss the Company's financial and operating results for the fourth fiscal quarter and year ended December 31, 2015, Defendant Dayno stated in relevant part:

[I]n an oral clinical HAP study with ARYMO ER administered as an intact tablet or after multi-set manipulation, subjects reported statistically significant lower maximum drug liking compared to manipulated MS Contin, a positive result on the primary study endpoint.

The cumulative results from the Category 1 and 2, 3, studies have demonstrated *that ARYMO ER with its abuse-deterrent properties takes more time and effort to attempt to manipulate with less success in defeating the tablet and then after those maneuvers has lower potential for accidental misuse by chewing* . . . .

(Emphasis added.)

22.    On March 11, 2016, Egalet filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2015 (the "2015 10-K"). For the quarter, Egalet reported a net loss of $6.79 million, or $0.28 per diluted share, on revenue of $19.38 million, compared to a net loss of $8.46 million, or $0.49 per diluted share, on revenue of $830,000 for the same period in the prior year. For fiscal year 2015, Egalet reported a net loss of $57.93 million or $2.94 per diluted share, on revenue of $22.83 million, compared to a net loss of $43.21 million, or $2.97 per diluted share, on revenue of $1.92 million for fiscal year 2014.

23.    In the 2015 10-K, the Company stated:

**Overview**

We are a fully integrated specialty pharmaceutical company developing, manufacturing and commercializing innovative treatments for pain and other conditions. Egalet was founded around our proprietary Guardian™ Technology that can be applied broadly across different classes of pharmaceutical products. Using this technology, we have two late-stage product candidates in development; ARYMO ER™, formerly known as Egalet-001, an abuse-deterrent ("AD"), extended-release ("ER"), oral morphine formulation, which, if approved by the U.S. Food and Drug Administration ("FDA"), could be on the market in 2016, and Egalet-002, an AD, ER, oral oxycodone formulation, which is in a Phase 3 program (our "lead product candidates"). Both lead product candidates are in development for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. In January 2015, we acquired and in-licensed two FDA-approved products— SPRIX® (ketorolac tromethamine) Nasal Spray and OXAYDO® (oxycodone HCl, USP) tablets for oral use only—CII (our "approved products")—that complement

7

our pain portfolio. With the addition of these products, we built our commercial organization ahead of the anticipated launch of our lead product candidates and market our approved products to the same target high-decile pain medicine prescribers to whom we expect to market ARYMO ER and Egalet-002, if approved.

24.     The 2015 10-K contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Radie and Musial, stating that the financial information contained in the 2015 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

25.     On May 10, 2016, Egalet filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 10-Q").  For the quarter, Egalet reported a net loss of $18.55 million, or $0.76 per diluted share, on revenue of $2.66 million, compared to a net loss of $16.72 million, or $1.02 per diluted share, on revenue of $810,000 for the same period in the prior year.

26.     The Q1 2016 10-Q contained certifications pursuant to SOX by Defendants Radie and Musial, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.     On August 4, 2016, Egalet issued a press release titled "Egalet Announces FDA Advisory Committees Recommend Approval of Abuse-Deterrent ARYMO™ ER (Morphine Sulfate) and Reports Second Quarter 2016 Financial Results," announcing that the joint meeting of the Anesthetic and Analgesic Drug Products Advisory Committee and Drug Safety and Risk Management Advisory Committee ("Committee") of the FDA voted for approval of ARYMO ER. The press release stated in pertinent part:

> [T]he U.S. Food and Drug Administration (FDA) voted 18 to 1 to recommend approval of ARYMO™ ER (morphine sulfate). ARYMO ER was developed using Egalet's proprietary Guardian™ Technology for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate.

8

...

"The Committees' support of ARYMO ER labeling as an abuse-deterrent product by the intravenous, nasal and oral routes of abuse is an important step forward in the development of this product candidate," said Bob Radie, president and CEO of Egalet. "We believe ARYMO can offer patients, when appropriate, effective pain relief and can deter potential abuse. We will continue to work closely with the FDA over the next few months to bring this product to the market."

***Based on the committees' votes, Egalet anticipates, if approved, the label for ARYMO ER will describe the product's abuse-deterrent properties that are expected to reduce, but not totally prevent, abuse of the drug when the tablets are manipulated.*** The FDA is not bound by the recommendations of its advisory committees, but will consider their guidance during the review of the NDA for ARYMO ER. The FDA Prescription Drug User Fee Act (PDUFA) goal date for a decision is October 14, 2016.

(Emphasis added.)

28.    On August 5, 2016, Egalet filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 10-Q"). For the quarter, Egalet reported a net loss of $23.78 million, or $0.97 per diluted share, on revenue of $3.45 million, compared to a net loss of $17.07 million, or $1.03 per diluted share, on revenue of $960,000 for the same period in the prior year.

29.    The Q2 2016 10-Q contained certifications pursuant to SOX by Defendants Radie and Musial, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30.    On August 6, 2016, during a conference call to discuss the Company's financial and operating results for the second fiscal quarter ended June 30, 2016, Defendant Radie addressed the oral abuse deterrent claim and how chewing resistance versus a label that included oral AD would impact commercialization.

"I don't think it is going to have any impact on commercialization. I do think that there were a few of the panelists today, who I think made some very valid points about the heterogeneity of oral abuse, and that it isn't one sort of type. And I think

the agency certainly the body language appeared to some agreement that they may have to get a bit more specific as time goes on about what does oral abuse mean.

***We continue to believe that this product would be difficult to abuse orally. One because it is very hard and difficult if not impossible to chew,*** and then secondly as we stated in our discussion in our presentation today, the category [2,3] oral study that we did do in some of the endpoints that the FDA questioned as well as the panelists questioned, we think it is important for the agency to keep in mind that what is eliminated from some of those scores is that level of effort to go into the manipulation step, which of course, doesn't get captured in some of the instruments like take drug again. They are just being handed the drug, already manipulated by a pharmacist in a blinded fashion to ensure blinding one, and ensure consistency of dose.

***While the panelist didn't fully grasp that concept, we will continue to have those discussions with the FDA in the hope of getting the broadest oral claim possible, but certainly based on the feedback from the advisers and the difficulty in chewing; we know we have a position here."***

(Emphasis added.)

31.     On November 8, 2016, Egalet filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q3 2016 10-Q"). For the quarter, Egalet reported a net loss of $26.94 million, or $1.10 per diluted share, on revenue of $4.71 million, compared to a net loss of $17.36 million, or $0.81 per diluted share, on revenue of $1.69 million for the same period in the prior year.

32.     The Q3 2016 10-Q contained certifications pursuant to SOX by Defendants Radie and Musial, stating that the financial information contained in the Q3 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

33.     The statements referenced in ¶¶ 20-32 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Egalet misrepresented ARYMO ER's oral abuse-deterrent profile; (ii) Egalet falsely or misleadingly overstated ARYMO

ER's chances to receive the oral abuse-deterrent labeling; (iii) the NDA for ARYMO ER lacked sufficient data to support the oral-labeling claims; (iv) the label was likely not to include the oral abuse-deterrent claims; and (v) as a result of the foregoing, Egalet's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

34.     On January 9, 2017, post-market, Egalet issued a press release, filed on Form 8-K with the SEC, entitled "Egalet Receives FDA Approval for ARYMO™ ER (morphine sulfate) C-II, an Extended-Release Morphine Product Formulated with Abuse-Deterrent Properties for Treatment of Chronic Pain," announcing the approval of its product Arymo ER. The FDA only granted an intravenous abuse-deterrent label claim and did not approve the oral abuse-deterrent labeling as requested by the Company.  The press release stated in pertinent part:

> ARYMO ER has been approved in three dosage strengths: 15 mg, 30 mg and 60 mg. The U.S. commercial launch, utilizing Egalet's established commercial infrastructure, is planned for the first quarter 2017.
>
> "With the majority of ER opioids in easy to abuse forms, it is important that healthcare professionals have additional treatment options like ARYMO ER that are resistant to different methods of manipulation using a variety of tools," said Bob Radie, president and chief executive officer of Egalet. ***"ARYMO ER has physical and chemical properties expected to make abuse by injection difficult, which is important given it is the most common non-oral route of morphine abuse and the most dangerous. With our commercial organization in place, we are ready to launch ARYMO ER in the first quarter of 2017."***
>
> The FDA approval of ARYMO ER triggered $40 million in new funding to Egalet from the second tranche of the senior secured debt financing previously announced on August 31, 2016. In connection with the second tranche, the note purchasers will also receive a royalty right, representing a right to receive an aggregate 1.5% royalty payment on net sales of ARYMO ER, as further described in Egalet's current report on form 8-K filed on September 1, 2016.

(Emphasis added.)

35.     On that same day, the FDA issued a statement entitled "Impact of Exclusivity on Approval of Arymo ER."  The statement read in pertinent part:

[1-9-17] Today, the FDA approved Arymo ER (morphine sulfate extended-release tablets), a new extended-release opioid with abuse-deterrent properties. Arymo ER is approved to treat pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. Arymo ER is formulated to give it physicochemical properties expected to make abuse by injection difficult. However, abuse by the intravenous, intranasal, and oral routes is still possible.

Expanding access to abuse-deterrent opioids to discourage misuse and abuse is part of the FDA's Opioid Action Plan, and the pharmaceutical industry has shown significant interest in the development of abuse-deterrent products. Technology is progressing rapidly, and these medications hold promise as their abuse-deterrent qualities continue to improve and as they become more widely available.

As the FDA reviews new drug applications, the agency works through various issues that may arise, including exclusivity. *Another product, MorphaBond (morphine sulfate extended-release tablets), has marketing exclusivity for labeling describing the expected reduction of abuse of single-entity extended-release morphine by the intranasal route due to physicochemical properties. Due to MorphaBond's marketing exclusivity, no other single-entity extended-release morphine product submitted in an abbreviated new drug application or 505(b)(2) application can be approved for that use at this time.*

Because the science of abuse deterrence is still evolving and the agency does not yet know which technologies will ultimately prove most effective in deterring opioid abuse, the agency believes that it is in the interest of public health to encourage development of multiple abuse-deterrent alternatives while continuing to promote and protect innovation.

(Emphasis added.)

36.     On this news, Egalet's share price declined $1.86, or 22.2%, to close at $6.52 per share on January 10, 2017.

37.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise

12

acquired Egalet securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

39.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Egalet securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Egalet or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

41.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

13

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Egalet;

- whether the Individual Defendants caused Egalet to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Egalet securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

44.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Egalet securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Egalet securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45.      Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46.      Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

47.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.      This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49.      During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Egalet securities; and (iii)

15

cause Plaintiff and other members of the Class to purchase or otherwise acquire Egalet securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

50.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Egalet securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Egalet's finances and business prospects.

51.     By virtue of their positions at Egalet, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

52.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Egalet securities from their personal portfolios.

53.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and/or directors of Egalet, the Individual Defendants had knowledge of the details of Egalet's internal affairs.

54.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Egalet.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Egalet's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Egalet securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Egalet's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Egalet securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

55.     During the Class Period, Egalet securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Egalet securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that

17

were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Egalet securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Egalet securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

56.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

58.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59.     During the Class Period, the Individual Defendants participated in the operation and management of Egalet, and conducted and participated, directly and indirectly, in the conduct of Egalet's business affairs.  Because of their senior positions, they knew the adverse non-public information about Egalet's misstatement of income and expenses and false financial statements.

60.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Egalet's

financial condition and results of operations, and to correct promptly any public statements issued by Egalet which had become materially false or misleading.

61.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Egalet disseminated in the marketplace during the Class Period concerning Egalet's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Egalet to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Egalet within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Egalet securities.

62.     Each of the Individual Defendants, therefore, acted as a controlling person of Egalet.  By reason of their senior management positions and/or being directors of Egalet, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Egalet to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Egalet and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

63.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Egalet.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 10, 2017

Respectfully submitted,

**BRODSKY & SMITH, LLC**

Evan J. Smith
Marc L. Ackerman
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
610-667-6200
610-667-9029 (Facsimile)

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
            ahood@pomlaw.com
            hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184

Email:  pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***

# EXHIBIT "A"

## CERTIFICATION PURSUANT TO
## <u>FEDERAL SECURITIES LAWS</u>

I, _____Steve Klein_____, hereby certify as follows:

1.     I have reviewed a complaint filed against Egalet Corporation ("Egalet") alleging violations of the federal securities laws;

2.     I did not purchase securities of Egalet at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.     I am willing to serve as lead plaintiff and representative party in this matter, including providing testimony at a deposition, if necessary;

4.     I understand that, if appointed lead plaintiff or representative party in this action, I will be subject to the jurisdiction of the Court and will be bound by all rulings of the Court, including rulings regarding any judgments;

5.     My transactions in Egalet stock during the Class Period are reflected in Exhibit A, attached hereto;

6.    During the three-year period preceding the date on which this Certification is signed, I have sought to serve as a representative party and/or filed a complaint on behalf of a class under the federal securities laws in the following actions:

- *Klein v. StoneMor Partners L.P.*, 2:16-cv-06275 (E.D. Pa.)
- *Masillionis v. Silver Wheaton Corp. et al.*, 2:15-cv-05146 (C.D. Cal.); and
- *Klein v. Wells Fargo & Company et al.*, 3:16-cv-05513 (N.D. Cal.).

7.     Beyond my pro rata share of any recovery, I will not accept payment for serving as a lead plaintiff and representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

8.      I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this <u>30th</u> day of January, 2017.


_____

*Signature*


_____

*Print Name*

**EGALET CORPORATION (EGLT)**                                          **Klein, Steve**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 8/8/2016 | Purchase | 200 | $8.1600 |